## Porter *versus* The Commonwealth.

Interest is not chargeable in favour of the Commonwealth, on the account of a County Treasurer, under the 35th section of the act of 30 March, 1811, relating to the settlement of public accounts, till three months after *its settlement* by the Auditor General and State Treasurer; and where a County Treasurer furnished a statement of his account to the Auditor General, but the same was not settled for ten years, the Treasurer was not chargeable with interest on the balance of the account rendered by him, though he had not paid or offered to pay to the Commonwealth the said balance, no demand having been made upon him for the same.

THIS was an appeal by defendant from the settlement of an account by the Auditor General and State Treasurer; appeal entered June 20, 1846. The defendant had been treasurer of Northampton County. He forwarded, in December, 1835, to the Auditor General a statement or account of State taxes on real and personal property, per Act of 28th March, 1831.

This account stated $8281.59 as the aggregate amount received for taxes by the accountant, and stated credits amounting to $5885.16. From these items the balance in favour of the Commonwealth was $2396.43.

The account of defendant was not acted on by the Auditor General and State Treasurer till 1846. It was settled by them, and on the 1st May, 1846, a balance was struck by adding to the before stated balance of $2396.43, ten years' interest, stated at 1437.85, making an aggregate balance against the accountant of $3834.28.

From this settlement the defendant appealed, and the objections specified by the attorney of the accountant were:

1. That the account was settled by the Auditor General, without any action exhibited to him on said account by the County Auditors of Northampton county.

2. That the account was settled after a lapse of more than ten years without notice.

3. That it purports to be a settlement merely of the account of taxes on real and personal estate, and not of the entire accounts of the appellant as Treasurer.

4. That the Auditor General has not credited the appellant with various sums of money, paid into the Treasury on and previous to the month of December, 1835, and in the months of January and February, 1836, amounting to about twenty-one hundred dollars or thereabouts.

5. That the appellant is charged with various sums and taxes, for which he is entitled to an exoneration, and which after the account is settled by the county auditors, should be charged to the account of his successor in office, in all amounting to about four hundred dollars.

[Porter *v.* The Commonwealth.]

6. That the Auditor General and State Treasurer had no jurisdiction to settle the account in question before action thereon by the county auditors.

The appeal was tried in the Common Pleas of *Dauphin county.*

PEARSON, President J., charged as follows :—

" This case is before the court on an appeal under the act of 1811. The defendant was treasurer of Northampton county for the years 183 , ——, ——, and in that capacity received certain money belonging to the commonwealth, assessed as taxes, &c., amounting according to his own statement returned under oath to          .
The statement was made out and forwarded to the Treasury department on                , but the money was never paid over or offered to be paid, although admitted to be in his hands.   On the 1st day of May, 1846, Mr. Porter's account was settled at the department, of which notice was given the next day.   A balance was struck against him amounting to $2396.43, on which was charged interest for ten years.   The only question now raised, is, whether interest can be charged against the defendant.   The principle is settled, that where one unjustly withholds money due to another, interest is chargeable as a matter of course.

\*        \*        \*        \*        \*        \*        \*

" The defendant insists that by the 35th section of the Act of 1811, interest can only be computed against him from the expiration of three months after the date of the settlement by the state department, and that such was the construction put on the act in the Easton Bank case, 10 *Barr* 442.

" We do not so understand that case.        \*        \*        \*        \*

" The construction which we give the 35th section of the Act of 1811, is, that in settling the accounts of the debtors to the State, the Auditor General and State Treasurer may charge interest where the law would ordinarily give it, and are not required to charge it where the non-payment arises from mutual misapprehension, without any laches on part of the debtor ; and the balance, composed of both principal and interest, found due to the Commonwealth, will bear interest from the expiration of three months from the time of settlement, provided no appeal is taken.   It is thus treated as a judgment, with the exception of allowing three months, *ex gratia,* to make payment.   When an appeal is taken, as here, the interest is to be computed from the time it was originally chargeable, without regard to the settlement of the account.   This view is strengthened by the 9th section of the Act of 20th April, 1846, which clearly shows the intention of the legislature to charge all defaulting officers with interest from the time the money came to their hands, although it is very true this case does not come within the *letter* of that Act, it is not a ' suit brought under it.'   The defendant urges that the non-payment here arose from a neglect

[Porter *v.* The Commonwealth.]

of the officers to settle his account. Had he paid over the amount admitted by his return under oath to be due, there would be some force in the argument; but as he neither paid nor offered to pay anything, it is in our opinion entirely unavailing. The Commonwealth is not driven to rely on the settlement by her officers alone in this case, but has clearly established the receipt of the money and indebtedness of the defendant by his own return. Even if the Commonwealth had the power to compel a prompt settlement and payment of her dues, yet it has become almost a legal maxim, that she cannot suffer through the neglect of her officers. Your verdict, therefore, will be rendered in favour of the plaintiff for $2396.43, with interest from the first day of May, 1836 (the time fixed by the State officers), till this day."

The charge was excepted to on part of defendant.

Verdict was rendered on 27 January, 1851, for the Commonwealth for $4517.57 damages.

It was assigned for error,
1. The Court erred in their charge in denying that the principles settled in the Easton Bank case ruled this cause, viz.: "The defendant insists, that by the 35th section of the Act of 1811, interest can only be computed against him, from the expiration of three months after the date of the settlement by the State Department, and that such was the construction put on the Act in the Easton Bank case, 10 *Barr* 442. We do not so understand this case."
2. The Court erred in instructing the jury to find a verdict in favor of the "plaintiff for $2396.73, with interest from the 1st of May, 1836."

The case was argued by *H. Alricks* and *Porter* for the appellant. As to the 13th section of the Act of 21 April, 1846, it was remarked that the Act of 1846 can furnish no guide as to the charge of *interest*, as that would be to give it a retroactive operation.

*McCormick* for the Commonwealth.

The opinion of the court, filed July 30, was delivered by

ROGERS, J.—We see nothing exceptionable in the trial except that part of the charge which relates to interest. The Auditor General charged the accountant with the sum of one thousand four hundred and thirty-seven dollars and eighty-five cents as interest on the amount due the Commonwealth, received by defendant as treasurer of State taxes assessed in Northampton county. The interest is charged from the 10th December, 1835, when the original return was made to the Auditor-General, till the first of May, 1846, when the account was settled.

[Porter *v.* The Commonwealth.]

The only provision made by the legislature in relation to payment of interest which bears on this case, is contained in the 35th section of the Act of the 30th March, 1811. It is there enacted, "That all balances due the Commonwealth on accounts settled agreeably to this Act, shall bear interest from three months after the date of settlement until paid." The account must be first settled, and then interest begins to run from the time specified. This Act by necessary implication would seem to negative the idea of charging interest in any other mode, and from any other time than is therein prescribed. But it is not necessary to put this case on that ground alone, for it may be conceded, when it plainly appears that the accountant unjustly withholds money due the Commonwealth, he is chargeable with interest. This principle is asserted in the case of the Easton Bank *v.* the Commonwealth, 10 *Barr* 453. It is true, as a general rule, that where one unjustly detains money belonging to another, interest for the forbearance is chargeable of course: Koons *v.* Miller, 3 *W. & Ser.* 271. But it is equally true, as is said in the Bank *v.* the Commonwealth, that when the fact of non-payment is ascribable to mutual misapprehension or to the laches of the creditor, interest is not demandable as of course. For this several cases are cited, viz. : 1 *Ser. & R.* 176, Brown *v.* Campbell; 9 *Ser. & R.* 409, King *v.* Diehl; *Moody & M.* 229, *n.,* Laing *v.* Stone; 2 *B. & A.* 305–8, Cameron *v.* Smith. The principle to be extracted from the cases, as applied to this case, is, that before we can charge the accountant with interest he must be convicted of wilful injustice to the Commonwealth. Here it must be conceded the defendant is not chargeable unless by a positive provision or a necessary implication from some Act of Assembly, or upon the principle above indicated. That there is no Act which directly touches his case except the Act of 1811, is not disputed. Does he then fall within the class of persons who unjustly withhold money belonging to another? Has the non-payment of the money arisen from his wilful default, or is it attributable to the omission, or negligence, or some other cause, of the Commonwealth's officers? That it is the latter, we think plain. It is not pretended but that the accountant made his return in due and proper time. No negligence in that particular is alleged; and had the accountant officers performed their duty we should have been saved this controversy. But instead of pursuing the path of duty plainly marked out, they suffer ten years to elapse, and then settle the account without any notice to defendant. From what cause this delay, this culpable negligence proceeded, has not been explained. Without settlement of the account, alone the duty of the accountant officers, the Commonwealth was not in a condition to sue, and yet interest is claimed when it is manifest that the loss arises from their own neglect. It is however said that accountant should have paid over all the

[Porter *v.* The Commonwealth.]

money in his hands; that he is therefore in default. He might have done so, it is true; but was he compelled to pay, alleging, as he did, that he had claims for moneys paid, the vouchers being mislaid? This is not so clear, particularly as there is no proof that payment was demanded. From some cause, which does not appear, the accountant was not required to pay; the account was suffered to lie over for ten years unsettled, without any notice whatever to the defendant. Had not the accountant, under such circumstances, some right to suppose the account rendered and payment made was satisfactory to the department? Was not this a misapprehension which, under the principle ruled, will exempt him from the penalty of paying interest for the unpaid balance? In the case already cited, the Easton Bank *v.* the Commonwealth, it is said, and the position is sustained by authority, that where there is laches in the creditor, interest is not demandable. But was there not great laches here, in suffering ten years to elapse before they put themselves in the condition to demand payment? It was not the fault of defendant, but of the Commonwealth, whose officers neglected to perform a plain and obvious duty. There was mutual misapprehension; to say the least of it, the fault was not all on one side; and this, according to the cases cited, is an answer to a claim of interest. It is however said that the right of the Commonwealth cannot be lost by the laches of its officers: 1 *Harris* 617, Haehnlen *v.* the Commonwealth; 9 *Wheaton* 720, United States *v.* Kirkpatrick. This general principle is not denied; but surely it cannot be extended so as to enable the Commonwealth to inflict a penalty upon its debtors in the shape of interest, when it appears that the loss proceeds either from their own omission or commission.

We see nothing in the suggestion that accountant was in default and therefore chargeable with interest, because he neglected to comply with the directions of the 40th section of the Act of the 15th of April, 1834. There would be something in this view of the case but for the Act itself, which prescribes the penalty for this neglect, viz.: the loss of commissions. Penalties are not inflicted by inference, much less double penalties. They are the results of express enactment or necessary implication; and we look in vain for any Act on our statute book visiting any of the Commonwealth officers with the penalty of paying interest for neglect of duty, or withholding money, except the Act of 1811, and the recent Act of 21st April, 1846. The Act of 1811 evidently contemplates prompt settlements, the legislature reasonably supposing that justice would be done by demanding interest to be paid from three months after settlement. This however was found not to answer, and the defect in the law, which the legislature alone could remedy, was cured by the Act of 21st April, 1846, which provides that in all suits against defaulting officers, interest

shall be allowed, and computed in favor of the Commonwealth, from the time the public money sued for came to the hands or should have been in the hands of such officers.    The latter Act shows the opinion of the legislature as to the law on the subject of computing interest.

Judgment reversed and a *venire de novo* awarded.